1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10

MICHAEL RIDEAUX,                          )
11                                                   )
           Plaintiff,                      )        Case No. C05-2100-RSL
12                                                   )
           v.                              )
13                                                   )
REED HOLTGEERTS, *et al.*,                 )        REPORT AND RECOMMENDATION
14                                                   )
           Defendants.                     )
15 _____ )

16              INTRODUCTION AND SUMMARY CONCLUSION

17          This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff filed his complaint while

18  confined as a pre-trial detainee at the King County Correctional Facility, Regional Justice Center

19  ("RJC"), in Kent, Washington.  Plaintiff alleges in his complaint that RJC classification policies and the

20  conditions of his confinement in the administrative segregation unit at the RJC violated his rights under

21  the First, Fifth, Eighth, and Fourteenth Amendments.  Plaintiff names the following defendants in this

22  action: Reed Holtgeerts, Director of the King County Department of Adult and Juvenile Detention;

23  and, Major William Hayes, Captain Michael Woodbury, and Correctional Program Supervisor Teri

24  Hansen, all employees at the RJC during times relevant to plaintiff's complaint.  Plaintiff requests

25  injunctive relief and damages.

26

REPORT AND RECOMMENDATION
PAGE - 1

1    Plaintiff has filed a motion for summary judgment and defendants have filed a cross-motion for
2 summary judgment.  Plaintiff has filed a response to defendants' cross-motion for summary judgment
3 and defendants, at the direction of the Court, filed a supplemental brief in support of their cross-
4 motion for summary judgment.  The briefing is now complete and the parties' motions are ripe for
5 review.  The Court, having reviewed the pending dispositive motions, and the balance of the record,
6 concludes that plaintiff's motion for summary judgment should be denied, defendants' motion for
7 summary judgment should be granted, and plaintiff's complaint and this action should be dismissed
8 with prejudice.

9                                              FACTS

10    On March 21, 2005, plaintiff was booked into the RJC for investigation of homicide.  (Dkt.
11 No. 41 at 2.)  Plaintiff was subsequently charged with one count of first degree murder, one count of
12 attempted first degree murder, and one count of first degree assault.  (*See* Dkt. No. 28 at 2.)   When
13 plaintiff was booked into the RJC, he was apparently first placed in the administrative segregation unit
14 for protective custody, and was then transferred to the general population.  (Dkt. No. 41 at 2.)
15 Plaintiff remained in the general population until May 11, 2005, when he was returned to
16 administrative segregation for protective custody at his own request.  (*Id*.)  The basis of his request to
17 return to protective custody was that other inmates were harassing him about his charges and he had
18 concerns for his safety.  (*Id*.)

19    Administrative segregation is a designation given to inmates who require physical separation
20 from other inmates for various reasons.  (Dkt. No. 17, Ex. 4.)  Administrative segregation consists of
21 six categories: ultra security; legal; protective custody; pre-disciplinary hearing segregation; post-
22 disciplinary hearing segregation or disciplinary deadlock; and, behavior management administrative
23 segregation.  (*See id*. at 2.)  Protective custody inmates are placed in administrative segregation
24 because they are deemed to be at risk in the general population.  (*Id*.)  At the RJC, all administrative
25 segregation inmates, regardless of designation, are housed in the same unit because of the subdivision
26 of space at that facility.  (*See id*., Ex. 4.)  Administrative segregation inmates are only allowed out of

1  their cells one hour each day, except for court appearances and medical appointments.  (Dkt. No. 28 at

2  2.)  In addition, inmates in the administrative segregation unit are not permitted to attend group

3  religious services with other inmates, but religious personnel are available to meet with administrative

4  segregation inmates individually upon request.  (*Id*.)

5        During the time plaintiff was assigned to protective custody, he received regular reviews of his

6  custody status by classification staff.  (*See* Dkt. No. 41 at 2.)  According to the notes of these reviews,

7  between June 2005 and July 2006, plaintiff at no time expressed any concerns, nor identified any

8  problems, related to his housing in the administrative segregation unit.  (*Id*. at 2-3.)  In fact, the notes

9  of the October 2005 review indicate that plaintiff elected at that time to remain in protective custody.

10  (*Id*. at 3.)  The notes of the November 2005 review indicate that plaintiff asked to remain in protective

11  custody until his sentencing.  (*Id*.)  In December 2005, plaintiff filed this civil rights action in which he

12  complains about the conditions under which he was incarcerated while housed in the administrative

13  segregation unit.  (*See* Dkt. No. 6.)

14        On July 25, 2006, plaintiff asked to be moved from protective custody.  (Dkt. No. 41 at 3.)

15  The request was denied because plaintiff was classified as "closed custody."  (*Id*.)  Plaintiff's security

16  classification was apparently related to the notoriety of his case and to the fact that plaintiff needed to

17  be kept separate from the co-defendant in his criminal case who was also housed at the RJC.  (*Id*.)  On

18  August 3, 2006, plaintiff demanded to be moved from protective custody to a closed custody unit in

19  the general population.  (*Id*.)  Plaintiff was not immediately moved because of the need for him to be

20  kept separate from his co-defendant.  (*Id*.)  On August 4, 2006, plaintiff was moved to general

21  population because a bed had opened up in the general population closed custody unit and because

22  plaintiff's co-defendant had been moved to the Seattle jail facility.  (*Id*.)  Plaintiff was transferred to

23  the Washington Department of Corrections on December 12, 2006.  (*Id*. at 2.)

24                                    <u>DISCUSSION</u>

25        Plaintiff asserts in his complaint that because of classification policies at the RJC, protective

26  custody inmates are forced to live in the administrative segregation unit of the RJC with inmates who

REPORT AND RECOMMENDATION
PAGE - 3

1  are housed there for behavioral or disciplinary reasons.  Plaintiff contends that because of this

2  intermixing of various classifications of inmates, protective custody inmates are forced to live in

3  isolation and are subjected to "punishment" rules.  Plaintiff identifies in his complaint a number of

4  specific disabilities associated with his placement in the administrative segregation unit which he

5  contends violated his federal constitutional rights.

6  Summary Judgment Standard

7          Summary judgment is appropriate when, viewing the evidence in the light most favorable to

8  the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving

9  party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is a fact

10  relevant to the outcome of the pending action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

11  248 (1986).  Genuine issues of material fact are those for which the evidence is such that "a reasonable

12  jury could return a verdict for the nonmoving party."  *Id.*

13          In response to a properly supported summary judgment motion, the nonmoving party may not

14  rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a

15  genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements

16  essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of evidence is insufficient to create a

17  factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling on summary judgment, the court does not

18  weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine

19  issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

20  Section 1983 Standard

21          In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he

22  suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that

23  the violation was proximately caused by a person acting under color of state law.  *See Crumpton v.*

24  *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is satisfied only if a

25  plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act,

26  or omitted to perform an act which he was legally required to do that caused the deprivation

REPORT AND RECOMMENDATION
PAGE - 4

1  complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588

2  F.2d 740, 743-44 (9th Cir. 1978)).

3        A defendant cannot be held liable under § 1983 solely on the basis of supervisory responsibility

4  or position. *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691-694

5  (1978). A supervisor is liable under §1983 only if he or she "participated in or directed the violations,

6  or knew of the violations and failed to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

7  1989). If damages are sought, sweeping allegations against a prison official will not suffice; an inmate

8  must set forth specific facts as to each individual defendant's participation. *Leer v. Murphy*, 844 F.2d

9  628, 634 (9th Cir. 1988).

10                                  Due Process: Pretrial Detainee

11        When a detainee challenges some aspect of his pretrial detention that is not alleged to violate

12  any express guarantee of the Constitution, the issue to be decided is the detainee's right to be free

13  from punishment. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). As explained by the Supreme Court in

14  *Bell*, "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt

15  in accordance with due process of law." *Id*. at 535.

16        While the Due Process Clause protects pretrial detainees from punishment, not every disability

17  imposed during pretrial detention constitutes "punishment" in the constitutional sense. *Bell v.*

18  *Wolfish*, 441 U.S. at 537. Thus, the test to be applied in determining whether particular restrictions

19  and conditions imposed as a result of pretrial detention amount to punishment in the constitutional

20  sense is whether there was an express intent to punish, or "whether an alternative purpose to which

21  [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in

22  relation to the alternative purpose assigned [to it]. *Id*. at 538 (quoting *Kennedy v. Mendoza-Martinez*,

23  372 U.S. 144, 168-169 (1963).

24        The Supreme Court has recognized that "maintaining institutional security and preserving

25  internal order and discipline are essential goals that may require limitation or retraction of the retained

26  constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. at

REPORT AND RECOMMENDATION
PAGE - 5

1   546.  The Supreme Court has further recognized that prison administrators "should be accorded wide-

2   ranging deference in the adoption and execution of policies and practices that in their judgment are

3   needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*,

4   441 U.S. at 547.

5          Plaintiff's due process challenges to the policy which causes inmates who are assigned to

6   protective custody to be housed in the administrative segregation unit are properly analyzed under the

7   standard announced in *Bell*.  Defendants argue in their supplemental brief in support of their motion

8   for summary judgment that plaintiff's constitutional rights were not violated by his placement in

9   administrative segregation.  Defendants note that plaintiff was placed into protective custody pursuant

10  to his own request, and that he remained in protective custody in order to ensure his own safety.

11         Defendants assert that there was no intent to punish plaintiff and that the reasons for his

12  placement in administrative segregation were not excessive considering the risk to plaintiff's personal

13  safety if he had been placed elsewhere.  Defendants also assert that while housed in the administrative

14  segregation unit, plaintiff had regular face-to-face interviews with classification staff to evaluate his

15  housing status.  Notably, the record reflects that plaintiff had thirteen such interviews during the

16  fourteen months he was confined in protective custody and plaintiff apparently never reported any

17  concerns about his housing assignment to classification staff despite the fact that he filed this lawsuit

18  after only seven months in protective custody.  And, when plaintiff finally did make a request to be

19  returned to the general population, this was accomplished as soon as space became available and

20  plaintiff's co-defendant had been transferred out of the facility.

21         Defendants' assertions support the conclusion that plaintiff's placement and retention in the

22  administrative segregation unit was not done with the express intent to punish plaintiff.  The question

23  thus becomes whether confining plaintiff in the administrative segregation unit was reasonably related

24  to a legitimate governmental interest.  *See Bell*, 441 U.S. at 438-439.  Defendants assert that safety

25  concerns mandated plaintiff's confinement in the administrative segregation unit.  The record reflects

26  that because of space limitations at the RJC, administrative segregation is the only housing option for

REPORT AND RECOMMENDATION
PAGE - 6

1  inmates, such as plaintiff, who need to be separated from other inmates for safety reasons.  While it is

2  apparently true that plaintiff's assignment to the administrative segregation unit resulted in more

3  restrictive conditions of confinement than plaintiff would have experienced had he remained in the

4  general population, the record supports the conclusion that the housing assignment was reasonably

5  related to a legitimate government objective; *i.e.*, ensuring plaintiff's safety.  Accordingly, defendants

6  are entitled to summary judgment with respect to plaintiff's due process claim.

7  <u>Conditions of Confinement</u>

8  Plaintiff not only complains about the policy that caused him to be incarcerated in the

9  administrative segregation unit, he also complains about a number of specific restrictions/conditions

10  associated with that confinement.  Plaintiff's complaints related to the conditions of confinement in the

11  administrative segregation unit appear to be primarily directed at demonstrating the disparity of

12  treatment between protective custody and general population inmates.  To the extent plaintiff intends

13  to assert independent constitutional challenges to his conditions of confinement, he fails to present any

14  meritorious claims for relief.[1]

15  *1.*    ***Due Process***

16  Plaintiff asserts that while in administrative segregation he was let out of his cell for only one

17  hour each day and that he was transported in chains or handcuffs whenever he was taken anywhere.

18  Plaintiff also contends that this limited out-of-cell time was often interrupted by having to "rack back"

19  while "punished" inmates were being moved, and that he was not allowed to use a broom or mop to

20  clean his cell, but was instead required to use a small piece of rag.  (*Id.*)  These restrictions are

21  inextricably linked to the fact of plaintiff's confinement in the administrative segregation unit and are

22  therefore subject to the due process analysis set forth above.  The requirement that inmates housed in

23  _____

24  [1]  The Court notes that while plaintiff asserted an Eighth Amendment claim in his complaint, he
acknowledges in his response to defendants' cross-motion for summary judgment that the Eighth
25  Amendment did not apply to him and that that claim should be dismissed.  As the parties appear to
agree that plaintiff's Eighth Amendment claim should be dismissed, the Court will not address that
26  specific constitutional claim further.

REPORT AND RECOMMENDATION
PAGE - 7

1   the administrative segregation unit be confined to their cells twenty three hours each day, that they be

2   transported in chains, that they be required to "rack back" when other inmates are moved, and that

3   their access to certain types of cleaning supplies be restricted, are policies which are clearly related to

4   maintenance of institutional security and internal discipline.  Accordingly, these restrictions do not rise

5   to the level of a constitutional violation and defendants are therefore entitled to summary judgment

6   with respect to plaintiff's due process claims.

7             **2.      *First Amendment***

8             Plaintiff also asserts in his complaint that there are no church or prayer meetings in the

9   administrative segregation unit.  In order to establish a free exercise violation, a plaintiff "must show

10  the defendants burdened the practice of his religion, by preventing him from engaging in conduct

11  mandated by his faith, without any justification reasonably related to legitimate penological interests."

12  *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997)(citing *Turner v. Safely*,  482 U.S. 78, 89

13  (1987)).  "In determining whether the challenged conduct was reasonable, the court should consider

14  several factors such as whether the regulation has a logical connection with a legitimate government

15  interest, whether alternative means exist to exercise the asserted right, and the impact that

16  accommodation of the prisoner's right would have on prison resources."  *O'Lone v. Shabazz*, 482

17  U.S. 342, 350-52 (1987)(citing *Turner* 482 U.S. at 84-89).

18            Plaintiff's free exercise claim, as set forth in his complaint, does not even identify his religion

19  much less show that the restrictions associated with his confinement in the administrative segregation

20  unit burden the practice of that religion in any way.  Plaintiff expands on his free exercise claim to

21  some extent in his motion for summary judgment where he alleges that he was denied the right to

22  receive visits from clergy, the right to confer privately with jail religious personnel, and the right to

23  communal worship, religious instruction, and religious counseling.  However, plaintiff again fails to

24  identify in his motion for summary judgment the religion he ascribes to.  Finally, in his response to

25  defendants' cross-motion for summary judgment, plaintiff asserts that he is a Christian and that in

26

REPORT AND RECOMMENDATION
PAGE - 8

1  order to practice this religion he should have the opportunity to assemble with others of his religion

2  for communal services.

3       While plaintiff asserts that he should have been provided the benefit of communal religious

4  services, he offers no evidence that his religion requires that its adherents meet in groups.  Moreover,

5  the record reflects that the curtailment of group worship meetings in the administrative segregation

6  unit is reasonably related to the RJC's goal of preserving internal order and security.  The record

7  further reflects that the RJC provided inmates with the alternative of requesting individual meetings

8  with religious personnel, an alternative which plaintiff apparently never availed himself of.  For these

9  reasons, defendants are entitled to summary judgment with respect to plaintiff's First Amendment

10  claim.

11       ***3.     Equal Protection***

12       Plaintiff asserts in his complaint that protective custody inmates are not treated equally to

13  inmates in the general population and that such discrepancies in treatment constitute a violation of his

14  rights under the Equal Protection Clause.  In order to state an equal protection claim under § 1983, a

15  plaintiff must show that the defendants acted with an intent or purpose to discriminate against the

16  plaintiff based upon membership in a protected class.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th

17  Cir. 1998).  Plaintiff makes no showing that any of the defendants knowingly or intentionally

18  discriminated against him or that he is a member of a protected class.  Accordingly, plaintiff has not

19  stated a viable equal protection claim.

20                    <u>CONCLUSION</u>

21       Based on the foregoing, this Court recommends that plaintiff's motion for summary judgment

22  be denied, that defendants' cross-motion for summary judgment be granted, and that plaintiff's

23

24

25

26

REPORT AND RECOMMENDATION
PAGE - 9

1   complaint and this action be dismissed with prejudice.  A proposed order accompanies this Report and

2   Recommendation.

3          DATED this <u>5th</u> day of July, 2007.

4
                                                    s/ James P. Donohue
5                                                   United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE - 10